Approved by the Wisconsin Real Estate Examining Board
03-1-12 (Optional Use Date) 07-1-12 (Mandatory Use Date)

**Redefined Realty Advisors, LLC**
**WISCONSIN REALTORS® ASSOCIATION**
4801 Forest Run Road
Madison, Wisconsin 53704
Page 1 of 9, WB-15

**WB-15 COMMERCIAL OFFER TO PURCHASE**

1. LICENSEE DRAFTING THIS OFFER ON _____May 20, 2020_____ [DATE] ~~IS (AGENT OF BUYER)~~
2. ~~(AGENT OF SELLER/LISTING BROKER) (AGENT OF BUYER AND SELLER)~~ STRIKE THOSE NOT APPLICABLE
3. **GENERAL PROVISIONS** The Buyer, DeMaryl R. Howard and/or assigns
4. _____, offers to purchase the Property known as [Street Address] 4022 N 27th Street
5. _____ in the _____ City
6. of _____ Milwaukee _____, County of _____ Milwaukee _____, Wisconsin
7. (Insert additional description, if any, at lines 109-115 or 277-286 or attach as an addendum per line 479), on the following terms:
8. ■ PURCHASE PRICE: Three Hundred Fifty Thousand
9. _____ Dollars ($ 350,000.00 ).
10. ■ EARNEST MONEY of $ _____ accompanies this Offer and earnest money of $ 5,000.00 will be
11. mailed, or commercially or personally delivered within _____ ten (10) business _____ days of acceptance to ~~listing broker~~ or
12. Members Title Group, LLC PO Box 241398, Milwaukee, WI 53224
13. ■ THE BALANCE OF PURCHASE PRICE will be paid in cash or equivalent at closing unless otherwise provided below.
14. ■ INCLUDED IN PURCHASE PRICE: Seller is including in the purchase price the Property, all Fixtures on the Property on the date of this Offer
15. not excluded at lines 20-22, and the following additional items: _____
16. _____
17. _____
18. All personal property included in purchase price will be transferred by bill of sale or _____
19. _____
20. ■ NOT INCLUDED IN PURCHASE PRICE: _____
21. _____
22. _____
23. **CAUTION**: Identify trade fixtures owned by tenant, if applicable, and Fixtures that are on the Property (see lines 303-310) to be excluded
24. by Seller or which are rented and will continue to be owned by the lessor.
25. **NOTE**: The terms of this Offer, not the listing contract or marketing materials, determine what items are included/excluded.
26. **ACCEPTANCE** Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical copies of the Offer.
27. **CAUTION**: Deadlines in the Offer are commonly calculated from acceptance. Consider whether short term deadlines running from
28. acceptance provide adequate time for both binding acceptance and performance.
29. **BINDING ACCEPTANCE** This Offer is binding upon both Parties only if a copy of the accepted Offer is delivered to Buyer on or before
30. _____ May 29, 2020 _____. Seller may keep the Property on the market and accept
31. secondary offers after binding acceptance of this Offer.
32. **CAUTION**: This Offer may be withdrawn prior to delivery of the accepted Offer.
33. **OPTIONAL PROVISIONS** TERMS OF THIS OFFER THAT ARE PRECEDED BY AN OPEN BOX (☐) ARE PART OF THIS OFFER ONLY IF
34. THE BOX IS MARKED SUCH AS WITH AN "X." THEY ARE NOT PART OF THIS OFFER IF MARKED "N/A" OR ARE LEFT BLANK.
35. **DELIVERY OF DOCUMENTS AND WRITTEN NOTICES** Unless otherwise stated in this Offer, delivery of documents and written notices to a
36. Party shall be effective only when accomplished by one of the methods specified at lines 37-54.
37. (1) Personal Delivery: giving the document or written notice personally to the Party, or the Party's recipient for delivery if named at line 38 or 39.
38. Seller's recipient for delivery (optional): _____
39. Buyer's recipient for delivery (optional): _____
40. ☐ (2) Fax: fax transmission of the document or written notice to the following telephone number:
41. Seller: ( _____ ) _____ Buyer: ( _____ ) _____
42. [X] (3) Commercial Delivery: depositing the document or written notice fees prepaid or charged to an account with a commercial delivery
43. service, addressed either to the Party, or to the Party's recipient for delivery if named at line 38 or 39, for delivery to the Party's delivery address at
44. line 47 or 48.
45. ☐ (4) U.S. Mail: depositing the document or written notice postage prepaid in the U.S. Mail, addressed either to the Party, or to the Party's
46. recipient for delivery if named at line 38 or 39, for delivery to the Party's delivery address at line 47 or 48.
47. Delivery address for Seller: 3401 N. 35th Street, Milwaukee WI 53216
48. Delivery address for Buyer: 1134 S. 19th Street, Milwaukee WI 53204
49. [X] (5) E-Mail: electronically transmitting the document or written notice to the Party's e-mail address, if given below at line 53 or 54. If this is a
50. consumer transaction where the property being purchased or the sale proceeds are used primarily for personal, family or household purposes,
51. each consumer providing an e-mail address below has first consented electronically to the use of electronic documents, e-mail delivery and
52. electronic signatures in the transaction, as required by federal law.
53. E-Mail address for Seller (optional): inctntlogistics@gmail.com
54. E-Mail address for Buyer (optional): Fortunatefutures7@gmail.com
55. **PERSONAL DELIVERY/ACTUAL RECEIPT** Personal delivery to, or Actual Receipt by, any named Buyer or Seller constitutes personal delivery
56. to, or Actual Receipt by, all Buyers or Sellers.

Redefined Realty Advisors, LLC, N51W24953 Lisbon Rd Pewaukee WI 53072
Phone: 2627325800     Fax: 8888619115     Bob Tarantino                                        Living Epistle
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case 19-25789-gmh   Doc 104-1   Filed 06/10/20   Page 1 of 10                 Exhibit A

57 **PROPERTY CONDITION REPRESENTATIONS** Seller represents to Buyer that as of the date of acceptance Seller has no notice or knowledge
58 of Conditions Affecting the Property or Transaction (lines 181-215) other than those identified in Seller's disclosure report dated **May 20, 2020**
59 and Real Estate Condition Report, if applicable, dated **May 20, 2020**, which was/were received by Buyer prior to Buyer
60 signing this Offer and which is/are made a part of this offer by reference [COMPLETE DATES OR STRIKE AS APPLICABLE] and
61 **See Addendum A - property is being sold "as is."**
62 _____ [INSERT CONDITIONS NOT ALREADY INCLUDED IN THE DISCLOSURE OR CONDITION REPORT(S)].
63 CAUTION: If the Property includes 1-4 dwelling units, a Real Estate Condition Report containing the disclosures provided in Wis. Stat. §
64 709.03 may be required. Excluded from this requirement are sales of property that has never been inhabited, sales exempt from the real
65 estate transfer fee, and sales by certain court-appointed fiduciaries, (for example, personal representatives who have never occupied
66 the Property). Buyer may have rescission rights per Wis. Stat. § 709.05.
67 **CLOSING** This transaction is to be closed no later than **July 20, 2020**
68 _____ at the place selected by Seller, unless otherwise agreed by the Parties in writing.
69 ~~CLOSING PRORATIONS The following items, if applicable, shall be prorated at closing, based upon date of closing values: real estate taxes,~~
70 ~~rents, prepaid insurance (if assumed), private and municipal charges, property owners association assessments, fuel and~~ _____
71 _____ ;
72 ~~CAUTION: Provide basis for utility charges, fuel or other prorations if date of closing value will not be used.~~
73 ~~Any income, taxes or expenses shall accrue to Seller, and be prorated at closing, through the day prior to closing.~~
74 ~~Real estate taxes shall be prorated at closing based on [CHECK BOX FOR APPLICABLE PRORATION FORMULA]:~~
75 ~~☐ The net general real estate taxes for the preceding year, or the current year if available (Net general real estate taxes are defined as~~
76 ~~general property taxes after state tax credits and lottery credits are deducted) (NOTE: THIS CHOICE APPLIES IF NO BOX IS CHECKED)~~
77 ~~☐ Current assessment times current mill rate (current means as of the date of closing)~~
78 ~~☐ Sale price, multiplied by the municipality area-wide percent of fair market value used by the assessor in the prior year, or current year if~~
79 ~~known, multiplied by current mill rate (current means as of the date of closing)~~
80 ~~☐ _____ ;~~
81 ~~CAUTION: Buyer is informed that the actual real estate taxes for the year of closing and subsequent years may be substantially~~
82 ~~different than the amount used for proration especially in transactions involving new construction, extensive rehabilitation, remodeling~~
83 ~~or area-wide re-assessment. Buyer is encouraged to contact the local assessor regarding possible tax changes.~~
84 ~~☐ Buyer and Seller agree to re-prorate the real estate taxes, through the day prior to closing based upon the taxes on the actual tax bill for~~
85 ~~the year of closing, with Buyer and Seller each owing his or her pro-rata share. Buyer shall, within 5 days of receipt, forward a copy of the bill~~
86 ~~to the forwarding address Seller agrees to provide at closing. The Parties shall re-prorate within 30 days of Buyer's receipt of the actual tax~~
87 ~~bill. Buyer and Seller agree that is a post-closing obligation and is the responsibility of the Parties to complete, not the responsibility of the real~~
88 ~~estate brokers in this transaction.~~
89 **OCCUPANCY** Occupancy of the entire Property shall be given to Buyer at time of closing unless otherwise provided in this Offer at lines 109-115
90 or 277-286 or in an addendum attached per line 479. At time of Buyer's occupancy, Property shall be in broom swept condition and free of all
91 debris and personal property except for personal property belonging to current tenants, or that sold to Buyer or left with Buyer's consent.
92 Occupancy shall be given subject to tenant's rights, if any.
93 **LEASED PROPERTY** If Property is currently leased and lease(s) extend beyond closing, Seller shall assign Seller's rights under said lease(s)
94 and transfer all security deposits and prepaid rents thereunder to Buyer at closing. The terms of the (written) (oral) [STRIKE ONE] lease(s), if any,
95 are **The property is leased to the Buyer. Rent is $2,500.00/month and there is no security deposit.**
96 _____ . Insert additional terms, if any, at lines 109-115 or 277-286 or attach as an addendum per line 479.
97 ☐ ESTOPPEL LETTERS: Seller shall deliver to Buyer no later than _____ days before closing, estoppel letters dated within
98 _____ days before closing, from each non-residential tenant, confirming the lease term, rent installment amounts, amount of security
99 deposit, and disclosing any defaults, claims or litigation with regard to the lease or tenancy.
100 **RENTAL WEATHERIZATION** ~~This transaction (is) (is not) [STRIKE ONE] exempt from Wisconsin Rental Weatherization Standards (Wis. Admin.~~
101 ~~Code Ch. SPS 367). If not exempt, (Buyer) (Seller) [STRIKE ONE] ("Buyer" if neither is stricken) shall be responsible for compliance, including all~~
102 ~~costs, with Wisconsin Rental Weatherization Standards. If Seller is responsible for compliance, Seller shall provide a Certificate of Compliance at~~
103 ~~closing.~~
104 **TIME IS OF THE ESSENCE** "Time is of the Essence" as to: (1) earnest money payment(s); (2) binding acceptance; (3) occupancy; (4) date of
105 closing; (5) contingency Deadlines [STRIKE AS APPLICABLE] and all other dates and Deadlines in this Offer except: _____
106 _____ . If "Time
107 is of the Essence" applies to a date or Deadline, failure to perform by the exact date or Deadline is a breach of contract. If "Time is of the Essence"
108 does not apply to a date or Deadline, then performance within a reasonable time of the date or Deadline is allowed before a breach occurs.
109 **ADDITIONAL PROVISIONS/CONTINGENCIES** **Buyer will pay for all of Seller's closing costs, including**
110 **transfer fee, premium for owner's policy, gap endorsement premium, special assessment letter**
111 **charges, and closing fee.**
112 _____
113 **There shall be no prorations at closing. Buyer shall be responsible for all remaining 2019 real**
114 **property taxes and assessments, and all 2020 taxes and assessments.**
115 _____

116 ☐ **PROPOSED USE CONTINGENCIES:** Buyer is purchasing the Property for the purpose of: _____
117 _____
118 _____ [insert proposed use and type and size of building, if applicable; e.g.
119 restaurant/tavern with capacity of 350 and 3 second floor dwelling units]. The optional provisions checked on lines 123-139 shall be deemed
120 satisfied unless Buyer delivers to Seller by the deadline(s) set forth on lines 123-139 written notice specifying those items which cannot be
121 satisfied and written evidence substantiating why each specific item included in Buyer's notice cannot be satisfied. Upon delivery of Buyer's notice,
122 this Offer shall be null and void. Seller agrees to cooperate with Buyer as necessary to satisfy the contingencies checked at lines 123-139.
123 ☐ **EASEMENTS AND RESTRICTIONS:** This Offer is contingent upon Buyer obtaining, within _____ days of acceptance, at
124 (Buyer's) (Seller's) [STRIKE ONE] ("Buyer's" if neither is stricken) expense, copies of all public and private easements, covenants and
125 restrictions affecting the Property and a written determination by a qualified independent third party that none of these prohibit or significantly
126 delay or increase the costs of the proposed use or development identified at lines 116 to 118.
127 ☐ **APPROVALS:** This Offer is contingent upon Buyer obtaining, at (Buyer's) (Seller's) [STRIKE ONE] ("Buyer's" if neither is stricken) expense,
128 all applicable governmental permits, approvals and licenses, as necessary and appropriate, or the final discretionary action by the granting
129 authority prior to the issuance of such permits, approvals and licenses, for the following items related to Buyer's proposed use:
130 _____
131 or delivering written notice to Seller if the item(s) cannot be obtained or can only be obtained subject to conditions which significantly increase
132 the cost of Buyer's proposed use, all within _____ days of acceptance of this Offer.
133 ☐ **ACCESS TO PROPERTY:** This Offer is contingent upon Buyer obtaining, within _____ days of acceptance, at (Buyer's) (Seller's)
134 [STRIKE ONE] ("Buyer's" if neither is stricken) expense, written verification that there is legal vehicular access to the Property from public roads.
135 ☐ **LAND USE APPROVAL:** This Offer is contingent upon Buyer obtaining, at (Buyer's) (Seller's) [STRIKE ONE] ("Buyer's" if neither is stricken)
136 expense, a ☐ rezoning; ☐ conditional use permit; ☐ license; ☐ variance; ☐ building permit; ☐ occupancy permit; ☐ other _____
137 _____ [CHECK ALL THAT APPLY], for the Property for its proposed use described
138 at lines 116-118 or delivering written notice to Seller if the item(s) cannot be obtained or can only be obtained subject to conditions which
139 significantly increase the cost of Buyer's proposed use, all within _____ days of acceptance.
140 ☐ **MAP OF THE PROPERTY:** This Offer is contingent upon (Buyer obtaining) (Seller providing) [STRIKE ONE] ("Seller providing" if neither is
141 stricken) a _____ survey (ALTA/ACSM Land Title Survey if survey type is not
142 specified) dated subsequent to the date of acceptance of this Offer and prepared by a registered land surveyor, within _____ days of
143 acceptance, at (Buyer's) (Seller's) [STRIKE ONE] ("Seller's" if neither is stricken) expense. The map shall show minimum of _____ acres,
144 maximum of _____ acres, the legal description of the Property, the Property's boundaries and dimensions, visible encroachments upon
145 the Property, the location of improvements, if any, and: _____
146 _____. [STRIKE AND COMPLETE AS APPLICABLE] Additional map features
147 which may be added include, but are not limited to: staking of all corners of the Property; identifying dedicated and apparent streets; lot
148 dimensions; total acreage or square footage; utility installations; easements or rights-of-way. Such survey shall be in satisfactory form and
149 accompanied by any required surveyor's certificate sufficient to enable Buyer to obtain removal of the standard survey exception on the title policy.
150 **CAUTION: Consider the cost and the need for map features before selecting them. Also consider the time required to obtain the map**
151 **when setting the deadline.**
152 This contingency shall be deemed satisfied unless Buyer, within five (5) days of the earlier of: (1) Buyer's receipt of the map; or (2) the deadline for
153 delivery of said map, delivers to Seller a copy of the map and a written notice which identifies: (1) a significant encroachment; (2) information
154 materially inconsistent with prior representations; (3) failure to meet requirements stated within this contingency; or (4) the existence of conditions
155 that would prohibit the Buyer's intended use of the Property described at lines 116-118. Upon delivery of Buyer's notice, this Offer shall be null and
156 void.
157 ☒ **DOCUMENT REVIEW CONTINGENCY:** This Offer is contingent upon Seller delivering the following documents to Buyer within
158 _____ days of acceptance: [CHECK THOSE THAT APPLY; STRIKE AS APPROPRIATE]
159 ☒ Documents evidencing that the sale of the Property has been properly authorized, if Seller is a business entity.
160 ☐ A complete inventory of all furniture, fixtures, equipment and other personal property included in this transaction which is consistent with
161 representations made prior to and in this Offer.
162 ☐ Uniform Commercial Code lien search as to the personal property included in the purchase price, showing the Property to be free and clear
163 of all liens, other than liens to be released prior to or at closing.
164 ☐ Rent roll.
165 ☐ Other _____
166 _____.
167 Additional items which may be added include, but are not limited to: building, construction or component warranties, previous environmental site
168 assessments, surveys, title commitments and policies, maintenance agreements, other contracts relating to the Property, existing permits and
169 licenses, recent financial operating statements, current and future rental agreements, notices of termination and non-renewal, and assessment
170 notices.
171 All documents Seller delivers to Buyer shall be true, accurate, current and complete. Buyer shall keep all such documents confidential and
172 disclose them to third parties only to the extent necessary to implement other provisions of this Offer. Buyer shall return all documents (originals
173 and any reproductions) to Seller if this Offer is terminated.
174 ■ CONTINGENCY SATISFACTION: This contingency shall be deemed satisfied unless Buyer, within ___**fifteen (15)**___ days of the earlier of
175 receipt of the final document to be delivered or the deadline for delivery of the documents, delivers to Seller a written notice indicating that this

176 contingency has not been satisfied. Such notice shall identify which document(s) have not been timely delivered or do not meet the standard set
177 forth for the document(s). Upon delivery of such notice, this Offer shall be null and void.
178 |DEFINITIONS|
179 ■ ACTUAL RECEIPT: "Actual Receipt" means that a Party, not the Party's recipient for delivery, if any, has the document or written notice
180 physically in the Party's possession, regardless of the method of delivery.
181 ~~■ CONDITIONS AFFECTING THE PROPERTY OR TRANSACTION: "Conditions Affecting the Property or Transaction" are defined to include:~~
182 ~~a. Defects in structural components, e.g. roof, foundation, basement or other walls.~~
183 ~~b. Defects in mechanical systems, e.g. HVAC, electrical, plumbing, septic, well, fire safety, security or lighting.~~
184 ~~c. Underground or aboveground storage tanks presently or previously on the Property for storage of flammable or combustible liquids, including~~
185 ~~but not limited to gasoline and heating oil.~~
186 ~~d. Defect or contamination caused by unsafe concentrations of, or unsafe conditions relating to, lead paint, asbestos, radon, radium in water~~
187 ~~supplies, mold, pesticides or other potentially hazardous or toxic substances on the premises.~~
188 ~~e. Production of or spillage of methamphetamine (meth) or other hazardous or toxic substances on the Property.~~
189 ~~f. Zoning or building code violations, any land division involving the Property for which required state or local permits had not been obtained,~~
190 ~~nonconforming structures or uses, conservation easements, rights-of-way.~~
191 ~~g. Special purpose district, such as a drainage district, lake district, sanitary district or sewer district, that has the authority to impose~~
192 ~~assessments against the real property located within the district.~~
193 ~~h. Proposed, planned or commenced public improvements which may result in special assessments or otherwise materially affect the Property~~
194 ~~or the present use of the Property.~~
195 ~~i. Federal, state or local regulations requiring repairs, alterations or corrections of an existing condition.~~
196 ~~j. Flooding, standing water, drainage problems or other water problems on or affecting the Property.~~
197 ~~k. Material damage from fire, wind, floods, earthquake, expansive soils, erosion or landslides.~~
198 ~~l. Near airports, freeways, railroads or landfills, or significant odor, noise, water intrusion or other irritants emanating from neighboring property.~~
199 ~~m. Portion of the Property in a floodplain, wetland or shoreland zoning area under local, state or federal regulations.~~
200 ~~n. Property is subject to a mitigation plan required under administrative rules of the Department of Natural Resources related to county~~
201 ~~shoreland zoning ordinances, which obligates the owner of the Property to establish or maintain certain measures related to shoreland~~
202 ~~conditions and which is enforceable by the county.~~
203 ~~o. Encroachments; easements, other than recorded utility easements; access restrictions; covenants, conditions and restrictions; shared~~
204 ~~fences, walls, wells, driveways, signage or other shared usages; or leased parking.~~
205 ~~p. High voltage electric (100 KV or greater) or steel natural gas transmission lines located on but not directly serving the Property.~~
206 ~~q. Structure on the Property designated as a historic building, any part of the Property located in a historic district, or burial sites or~~
207 ~~archeological artifacts on the Property.~~
208 ~~r. All or part of the land has been assessed as agricultural land, the owner has been assessed a use-value conversion charge or the payment~~
209 ~~of a use-value conversion charge has been deferred.~~
210 ~~s. All or part of the Property is subject to, enrolled in or in violation of a certified farmland preservation zoning district or a farmland preservation~~
211 ~~agreement, or a Forest Crop, Managed Forest (see disclosure requirements in Wis. Stat. § 710.12), Conservation Reserve or comparable~~
212 ~~program.~~
213 ~~t. A pier is attached to the Property that is not in compliance with state or local pier regulations.~~
214 ~~u. Government investigation or private assessment/audit (of environmental matters) conducted.~~
215 ~~v. Other Defects affecting the Property.~~
216 ■ DEADLINES: "Deadlines" expressed as a number of "days" from an event, such as acceptance, are calculated by excluding the day the event
217 occurred and by counting subsequent calendar days. The deadline expires at midnight on the last day. Deadlines expressed as a specific number
218 of "business days" exclude Saturdays, Sundays, any legal public holiday under Wisconsin or Federal law, and other day designated by the
219 President such that the postal service does not receive registered mail or make regular deliveries on that day. Deadlines expressed as a specific
220 number of "hours" from the occurrence of an event, such as receipt of a notice, are calculated from the exact time of the event, and by counting 24
221 hours per calendar day. Deadlines expressed as a specific day of the calendar year or as the day of a specific event, such as closing, expire at
222 midnight of that day.
223 ■ DEFECT: "Defect" means a condition that would have a significant adverse effect on the value of the Property; that would significantly impair
224 the health or safety of future occupants of the Property; or that if not repaired, removed or replaced would significantly shorten or adversely affect
225 the expected normal life of the premises.
226 (Definitions Continued on page 6)

227            **IF LINE 228 IS NOT MARKED OR IS MARKED N/A LINES 264-269 APPLY.**
228 [X] **FINANCING CONTINGENCY:** This Offer is contingent upon Buyer being able to obtain a written __conventional__
229 [INSERT LOAN PROGRAM OR SOURCE] first mortgage loan commitment as described below, within __45__ days of acceptance of this
230 Offer. The financing selected shall be in an amount of not less than $ __280,000.00__ for a term of not less than __30__ years,
231 amortized over not less than __30__ years. Initial monthly payments of principal and interest shall not exceed $ _____ . Monthly
232 payments may also include 1/12th of the estimated net annual real estate taxes, hazard insurance premiums, and private mortgage insurance
233 premiums. The mortgage may not include a prepayment premium. Buyer agrees to pay discount points and/or loan origination fee in an amount
234 not to exceed _____ % of the loan. If the purchase price under this Offer is modified, the financed amount, unless otherwise provided, shall
235 be adjusted to the same percentage of the purchase price as in this contingency and the monthly payments shall be adjusted as necessary to
236 maintain the term and amortization stated above.
237 **CHECK AND COMPLETE APPLICABLE FINANCING PROVISION AT LINE 238 or 239.**
238     [X] **FIXED RATE FINANCING:** The annual rate of interest shall not exceed __3.500__ %.
239     [ ] **ADJUSTABLE RATE FINANCING:** The initial annual interest rate shall not exceed _____ %. The initial interest rate shall be
240     fixed for _____ months, at which time the interest rate may be increased not more than _____ % per year. The maximum
241     interest rate during the mortgage term shall not exceed _____ %. Monthly payments of principal and interest may be adjusted to
242     reflect interest changes
243 **If Buyer is using multiple loan sources or obtaining a construction loan or land contract financing, describe at lines 109-115 or 277-286**
244 **or in an addendum attached per line 479.**
245 **NOTE: If purchase is conditioned on buyer obtaining financing for operations or development consider adding a contingency for that**
246 **purpose.**
247 ▪ BUYER'S LOAN COMMITMENT: Buyer agrees to pay all customary loan and closing costs, to promptly apply for a mortgage loan, and to
248 provide evidence of application promptly upon request of Seller. If Buyer qualifies for the loan described in this Offer or another loan acceptable to
249 Buyer, Buyer agrees to deliver to Seller a copy of the written loan commitment no later than the deadline at line 229. **Buyer and Seller agree that**
250 **delivery of a copy of any written loan commitment to Seller (even if subject to conditions) shall satisfy Buyer's financing contingency if,**
251 **after review of the loan commitment, Buyer has directed, in writing, delivery of the loan commitment. Buyer's written direction shall**
252 **accompany the loan commitment. Delivery shall not satisfy this contingency if accompanied by a notice of unacceptability.**
253 **CAUTION: The delivered commitment may contain conditions Buyer must yet satisfy to obligate the lender to provide the loan. BUYER,**
254 **BUYER'S LENDER AND AGENTS OF BUYER OR SELLER SHALL NOT DELIVER A LOAN COMMITMENT TO SELLER OR SELLER'S**
255 **AGENT WITHOUT BUYER'S PRIOR WRITTEN APPROVAL OR UNLESS ACCOMPANIED BY A NOTICE OF UNACCEPTABILITY.**
256 ▪ SELLER TERMINATION RIGHTS: If Buyer does not make timely delivery of said commitment; Seller may terminate this Offer if Seller delivers
257 a written notice of termination to Buyer prior to Seller's Actual Receipt of a copy of Buyer's written loan commitment.
258 ▪ FINANCING UNAVAILABILITY: If financing is not available on the terms stated in this Offer (and Buyer has not already delivered an
259 acceptable loan commitment for other financing to Seller), Buyer shall promptly deliver written notice to Seller of same including copies of
260 lender(s)' rejection letter(s) or other evidence of unavailability. Unless a specific loan source is named in this Offer, Seller shall then have 10 days
261 to deliver to Buyer written notice of Seller's decision to finance this transaction on the same terms set forth in this Offer, and this Offer shall remain
262 in full force and effect, with the time for closing extended accordingly. If Seller's notice is not timely given, this Offer shall be null and void. Buyer
263 authorizes Seller to obtain any credit information reasonably appropriate to determine Buyer's credit worthiness for Seller financing.
264 ▪ IF THIS OFFER IS NOT CONTINGENT ON FINANCING: Within 7 days of acceptance, a financial institution or third party in control of Buyer's
265 funds shall provide Seller with reasonable written verification that Buyer has, at the time of verification, sufficient funds to close. If such written
266 verification is not provided, Seller has the right to terminate this Offer by delivering written notice to Buyer. Buyer may or may not obtain mortgage
267 financing but does not need the protection of a financing contingency. Seller agrees to allow Buyer's appraiser access to the Property for
268 purposes of an appraisal. Buyer understands and agrees that this Offer is not subject to the appraisal meeting any particular value, unless this
269 Offer is subject to an appraisal contingency, nor does the right of access for an appraisal constitute a financing contingency.
270 [X] **APPRAISAL CONTINGENCY:** This Offer is contingent upon the Buyer or Buyer's lender having the Property appraised at Buyer's expense
271 by a Wisconsin licensed or certified independent appraiser who issues an appraisal report dated subsequent to the date of this Offer indicating an
272 appraised value for the Property equal to or greater than the agreed upon purchase price. This contingency shall be deemed satisfied unless
273 Buyer, within __45__ days of acceptance, delivers to Seller a copy of the appraisal report which indicates that the appraised value is not
274 equal to or greater than the agreed upon purchase price, accompanied by a written notice of termination.
275 **CAUTION: An appraisal ordered by Buyer's lender may not be received until shortly before closing. Consider whether deadlines provide**
276 **adequate time for performance.**
277 **ADDITIONAL PROVISIONS/CONTINGENCIES** _____
278 _____
279 _____
280 _____
281 _____
282 _____
283 _____
284 _____
285 _____
286 _____

287 **DEFINITIONS CONTINUED FROM PAGE 4**
288 ■ ENVIRONMENTAL SITE ASSESSMENT: An "Environmental Site Assessment" (also known as a "Phase I Site Assessment") (see lines 379-395)
289 may include, but is not limited to: (1) an inspection of the Property; (2) a review of the ownership and use history of the Property, including a
290 search of title records showing private ownership of the Property for a period of 80 years prior to the visual inspection; (3) a review of historic and
291 recent aerial photographs of the Property, if available; (4) a review of environmental licenses, permits or orders issued with respect to the Property
292 (5) an evaluation of results of any environmental sampling and analysis that has been conducted on the Property; and (6) a review to determine if
293 the Property is listed in any of the written compilations of sites or facilities considered to pose a threat to human health or the environment
294 including the National Priorities List, the Department of Nature Resources' (DNR) Registry of Waste Disposal Sites, the DNR's Contaminated
295 Lands Environmental Action Network, and the DNR's Remediation and Redevelopment (RR) Sites Map including the Geographical Information
296 System (GIS) Registry and related resources. Any Environmental Site Assessment performed under this Offer shall comply with generally
297 recognized industry standards (e.g. current American Society of Testing and Materials "Standard Practice for Environmental Site Assesments"),
298 and state and federal guidelines, as applicable.
299 **CAUTION: Unless otherwise agreed an Environmental Site Assessment does not include subsurface testing of the soil or groundwater**
300 **or other testing of the Property for environmental pollution. If further investigation is required, insert provisions for a Phase II Site**
301 **Assessment (collection and analysis of samples), Phase III Environmental Site Assessment (evaluation of remediation alternatives) or**
302 **other site evaluation at lines 109-115 or 277-286 or attach as an addendum per line 479.**
303 ■ FIXTURE: A "Fixture" is an item of property which is physically attached to or so closely associated with land or improvements so as to be
304 treated as part of the real estate, including, without limitation, physically attached items not easily removable without damage to the premises,
305 items specifically adapted to the premises and items customarily treated as fixtures, including, but not limited to, all: garden bulbs; plants; shrubs
306 and trees; screen and storm doors and windows; electric lighting fixtures; window shades; curtain and traverse rods; blinds and shutters; central
307 heating and cooling units and attached equipment; water heaters and treatment systems; sump pumps; attached or fitted floor coverings; awnings;
308 attached antennas; garage door openers and remote controls; installed security systems; central vacuum systems and accessories; in-ground
309 sprinkler systems and component parts; built-in appliances; ceiling fans; fences; storage buildings on permanent foundations and docks/piers on
310 permanent foundations. A Fixture does not include trade fixtures owned by tenants of the Property.
311 **CAUTION: Exclude Fixtures not owned by Seller such as rented fixtures. See lines 20-22.**
312 ■ PROPERTY: Unless otherwise stated, "Property" means the real estate described at lines 4-7.
313 **DISTRIBUTION OF INFORMATION** Buyer and Seller authorize the agents of Buyer and Seller to: (i) distribute copies of the Offer to Buyer's
314 lender, appraisers, title insurance companies and any other settlement service providers for the transaction as defined by the Real Estate
315 Settlement Procedures Act (RESPA); (ii) report sales and financing concession data to multiple listing service sold databases; and (iii) provide
316 active listing, pending sale, closed sale and financing concession information and data, and related information regarding seller contributions,
317 incentives or assistance, and third party gifts, to appraisers researching comparable sales, market conditions and listings, upon inquiry.
318 **EARNEST MONEY**
319 ■ HELD BY: Unless otherwise agreed, earnest money shall be paid to and held in the trust account of the listing broker (Buyer's agent if Property
320 is not listed or Seller's account if no broker is involved), until applied to purchase price or otherwise disbursed as provided in the Offer.
321 **CAUTION: Should persons other than a broker hold earnest money, an escrow agreement should be drafted by the Parties or an**
322 **attorney. If someone other than Buyer makes payment of earnest money, consider a special disbursement agreement.**
323 ■ DISBURSEMENT: If negotiations do not result in an accepted offer, the earnest money shall be promptly disbursed (after clearance from
324 payor's depository institution if earnest money is paid by check) to the person(s) who paid the earnest money. At closing, earnest money shall be
325 disbursed according to the closing statement. If this Offer does not close, the earnest money shall be disbursed according to a written
326 disbursement agreement signed by all Parties to this Offer. If said disbursement agreement has not been delivered to broker within 60 days after
327 the date set for closing, broker may disburse the earnest money: (1) as directed by an attorney who has reviewed the transaction and does not
328 represent Buyer or Seller; (2) into a court hearing a lawsuit involving the earnest money and all Parties to this Offer; (3) as directed by court order;
329 or (4) any other disbursement required or allowed by law. Broker may retain legal services to direct disbursement per (1) or to file an interpleader
330 action per (2) and broker may deduct from the earnest money any costs and reasonable attorneys fees, not to exceed $250, prior to
331 disbursement.
332 ■ LEGAL RIGHTS/ACTION: Broker's disbursement of earnest money does not determine the legal rights of the Parties in relation to this Offer.
333 Buyer's or Seller's legal right to earnest money cannot be determined by broker. At least 30 days prior to disbursement per (1) or (4) above, broker
334 shall send Buyer and Seller notice of the disbursement by certified mail. If Buyer or Seller disagree with broker's proposed disbursement, a lawsuit
335 may be filed to obtain a court order regarding disbursement. Small Claims Court has jurisdiction over all earnest money disputes arising out of the
336 sale of residential property with 1-4 dwelling units and certain other earnest money disputes. Buyer and Seller should consider consulting
337 attorneys regarding their legal rights under this Offer in case of a dispute. Both Parties agree to hold the broker harmless from any liability for good
338 faith disbursement of earnest money in accordance with this Offer or applicable Department of Safety and Professional Services regulations
339 concerning earnest money. See Wis. Admin. Code Ch. REEB 18.

340 **TITLE EVIDENCE**
341 ■ CONVEYANCE OF TITLE: Upon payment of the purchase price, Seller shall convey the Property by warranty deed (trustee's deed if
342 Seller is a trust, personal representative's deed if Seller is an estate or other conveyance as provided herein) free and clear of all liens and
343 encumbrances, except: municipal and zoning ordinances and agreements entered under them, recorded easements for the distribution of utility
344 and municipal services, recorded building and use restrictions and covenants, present uses of the Property in violation of the foregoing disclosed
345 in Seller's disclosure report, and Real Estate Condition Report, if applicable, and in this Offer, general taxes levied in the year of closing and
346 <u>any other exceptions contained on the title commitment delivered to Buyer that are acceptable to</u>
347 <u>Buyer</u>
348 _____ which constitutes merchantable title for purposes of this transaction. Seller shall complete and execute the documents
349 necessary to record the conveyance at Seller's cost and pay the Wisconsin Real Estate Transfer Fee.
350 **WARNING: Municipal and zoning ordinances, recorded building and use restrictions, covenants and easements may prohibit certain**
351 **improvements or uses and therefore should be reviewed, particularly if Buyer contemplates making improvements to Property or a use**
352 **other than the current use.**
353 ■ TITLE EVIDENCE: Seller shall give evidence of title in the form of an owner's policy of title insurance in the amount of the purchase price on a
354 current ALTA form issued by an insurer licensed to write title insurance in Wisconsin. Seller shall pay all costs of providing title evidence to Buyer.
355 Buyer shall pay all costs of providing title evidence required by Buyer's lender.
356 ■ GAP ENDORSEMENT: Seller shall provide a "gap" endorsement or equivalent gap coverage at (Seller's) (Buyer's) STRIKE ONE ("Seller's" if
357 neither stricken) cost to provide coverage for any liens or encumbrances first filed or recorded after the effective date of the title insurance
358 commitment and before the deed is recorded, subject to the title insurance policy exclusions and exceptions, provided the title company will issue
359 the endorsement. If a gap endorsement or equivalent gap coverage is not available, Buyer may give written notice that title is not acceptable for
360 closing (see lines 365-371).
361 ■ PROVISION OF MERCHANTABLE TITLE: For purposes of closing, title evidence shall be acceptable if the required title insurance
362 commitment is delivered to Buyer's attorney or Buyer not more than **fifteen (15)** days after acceptance ("15" if left blank), showing title to the
363 Property as of a date no more than 15 days before delivery of such title evidence to be merchantable per lines 341-348, subject only to liens which
364 will be paid out of the proceeds of closing and standard title insurance requirements and exceptions, as appropriate.
365 ■ TITLE NOT ACCEPTABLE FOR CLOSING: If title is not acceptable for closing, Buyer shall notify Seller in writing of objections to title within
366 **five (5)** days ("15" if left blank) after delivery of the title commitment to Buyer or Buyer's attorney. In such event, Seller shall have a
367 reasonable time, but not exceeding **ten (10)** days ("5" if left blank), from Buyer's delivery of the notice stating title objections, to deliver
368 notice to Buyer stating Seller's election to remove the objections by the time set for closing. In the event that Seller is unable to remove said
369 objections, Buyer may deliver to Seller written notice waiving the objections, and the time for closing shall be extended accordingly. If Buyer does
370 not waive the objections, Buyer shall deliver written notice of termination and this Offer shall be null and void. Providing title evidence acceptable
371 for closing does not extinguish Seller's obligations to give merchantable title to Buyer.
372 ■ SPECIAL ASSESSMENTS/OTHER EXPENSES: Special assessments, if any, levied or for work actually commenced prior to the date of this
373 Offer shall be paid by Seller no later than closing. All other special assessments shall be paid by Buyer.
374 **CAUTION: Consider a special agreement if area assessments, property owners association assessments, special charges for current**
375 **services under Wis. Stat. § 66.0627 or other expenses are contemplated. "Other expenses" are one-time charges or ongoing use fees**
376 **for public improvements (other than those resulting in special assessments) relating to curb, gutter, street, sidewalk, municipal water,**
377 **sanitary and storm water and storm sewer (including all sewer mains and hook-up/connection and interceptor charges), parks, street**
378 **lighting and street trees, and impact fees for other public facilities, as defined in Wis. Stat. § 66.0617(1)(f).**
379 ☐ ENVIRONMENTAL EVALUATION CONTINGENCY: This Offer is contingent upon a qualified independent environmental consultant of
380 Buyer's choice conducting an Environmental Site Assessment of the Property (see lines 288-302), at (Buyer's) (Seller's) expense STRIKE ONE
381 ("Buyer's" if neither is stricken), which discloses no Defects. For the purpose of this contingency, a Defect (see lines 223-225) is defined to also
382 include a material violation of environmental laws, a material contingent liability affecting the Property arising under any environmental laws, the
383 presence of an underground storage tank(s) or material levels of hazardous substances either on the Property or presenting a significant risk of
384 contaminating the Property due to future migration from other properties. Defects do not include conditions the nature and extent of which Buyer
385 had actual knowledge or written notice before signing the Offer.
386 ■ CONTINGENCY SATISFACTION: This contingency shall be deemed satisfied unless Buyer, within _____ days of acceptance,
387 delivers to Seller a copy of the Environmental Site Assessment report and a written notice listing the Defect(s) identified in the Environmental Site
388 Assessment report to which Buyer objects (Notice of Defects).
389 **CAUTION: A proposed amendment is not a Notice of Defects and will not satisfy this notice requirement.**
390 ■ RIGHT TO CURE: Seller (shall) (shall not) STRIKE ONE ("shall" if neither is stricken) have a right to cure the Defects. If Seller has the right to
391 cure, Seller may satisfy this contingency by: (1) delivering written notice to Buyer within 10 days of Buyer's delivery of the Notice of Defects stating
392 Seller's election to cure Defects, (2) curing the Defects in a good and workmanlike manner and (3) delivering to Buyer a written report detailing the
393 work done within 3 days prior to closing. This Offer shall be null and void if Buyer makes timely delivery of the Notice of Defects and written
394 Environmental Site Assessment report and: (1) Seller does not have a right to cure or (2) Seller has a right to cure but: (a) Seller delivers written
395 notice that Seller will not cure or (b) Seller does not timely deliver the written notice of election to cure.

396 **DEFAULT** ~~Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and conditions of this Offer. A~~
397 ~~material failure to perform any obligation under this Offer is a default which may subject the defaulting party to liability for damages or other legal~~
398 ~~remedies.~~
399 ~~If Buyer defaults, Seller may:~~
400 ~~(1) sue for specific performance and request the earnest money as partial payment of the purchase price; or~~
401 ~~(2) terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) sue for actual damages.~~
402 ~~If Seller defaults, Buyer may:~~
403 ~~(1) sue for specific performance; or~~
404 ~~(2) terminate the Offer and request the return of the earnest money, sue for actual damages, or both.~~
405 ~~In addition, the Parties may seek any other remedies available in law or equity.~~
406 The Parties understand that the availability of any judicial remedy will depend upon the circumstances of the situation and the discretion of the
407 courts. If either Party defaults, the Parties may renegotiate the Offer or seek nonjudicial dispute resolution instead of the remedies outlined above.
408 By agreeing to binding arbitration, the Parties may lose the right to litigate in a court of law those disputes covered by the arbitration agreement.
409 NOTE: IF ACCEPTED, THIS OFFER CAN CREATE A LEGALLY ENFORCEABLE CONTRACT. BOTH PARTIES SHOULD READ THIS
410 DOCUMENT CAREFULLY. BROKERS MAY PROVIDE A GENERAL EXPLANATION OF THE PROVISIONS OF THE OFFER BUT ARE
411 PROHIBITED BY LAW FROM GIVING ADVICE OR OPINIONS CONCERNING YOUR LEGAL RIGHTS UNDER THIS OFFER OR HOW TITLE
412 SHOULD BE TAKEN AT CLOSING. AN ATTORNEY SHOULD BE CONSULTED IF LEGAL ADVICE IS NEEDED.
413 **ENTIRE CONTRACT** This Offer, including any amendments to it, contains the entire agreement of the Buyer and Seller regarding the
414 transaction. All prior negotiations and discussions have been merged into this Offer. This agreement binds and inures to the benefit of the Parties
415 to this Offer and their successors in interest.
416 **PROPERTY DIMENSIONS AND SURVEYS** Buyer acknowledges that any land, building or room dimensions, or total acreage or building square
417 footage figures, provided to Buyer by Seller or by a broker, may be approximate because of rounding, formulas used or other reasons, unless
418 verified by survey or other means.
419 **CAUTION: Buyer should verify total square footage or acreage figures and land, building or room dimensions, if material to Buyer's**
420 **decision to purchase.**
421 **BUYER'S PRE-CLOSING WALK-THROUGH** Within 3 days prior to closing, at a reasonable time pre-approved by Seller or Seller's agent, Buyer
422 shall have the right to walk through the Property to determine that there has been no significant change in the condition of the Property, except for
423 ordinary wear and tear and changes approved by Buyer, and that any Defects Seller has agreed to cure have been repaired in the manner agreed
424 to by the Parties.
425 **PROPERTY DAMAGE BETWEEN ACCEPTANCE AND CLOSING** Seller shall maintain the Property until the earlier of closing or occupancy of
426 Buyer in materially the same condition as of the date of acceptance of this Offer, except for ordinary wear and tear. If, prior to closing, the Property
427 is damaged in an amount of not more than five percent (5%) of the selling price, Seller shall be obligated to repair the Property and restore it to
428 the same condition that it was on the day of this Offer. No later than closing, Seller shall provide Buyer with lien waivers for all lienable repairs and
429 restoration. If the damage shall exceed such sum, Seller shall promptly notify Buyer in writing of the damage and this Offer may be canceled at
430 option of Buyer. Should Buyer elect to carry out this Offer despite such damage, Buyer shall be entitled to the insurance proceeds, if any, relating
431 to the damage to the Property, plus a credit towards the purchase price equal to the amount of Seller's deductible on such policy, if any. However,
432 if this sale is financed by a land contract or a mortgage to Seller, any insurance proceeds shall be held in trust for the sold purpose of restoring the
433 Property.
434 **NOTICE ABOUT SEX OFFENDER REGISTRY** You may obtain information about the sex offender registry and persons registered with the
435 registry by contacting the Wisconsin Department of Corrections on the Internet at http://www.widocoffenders.org or by telephone at
436 (608) 240-5830.
437 **INSPECTIONS AND TESTING** Buyer may only conduct inspections or tests if specific contingencies are included as a part of this Offer. An
438 "inspection" is defined as an observation of the Property which does not include an appraisal or testing of the Property, other than testing for
439 leaking carbon monoxide, or testing for leaking LP gas or natural gas used as a fuel source, which are hereby authorized. A "test" is defined as
440 the taking of samples of materials such as soils, water, air or building materials from the Property and the laboratory or other analysis of these
441 materials. Seller agrees to allow Buyer's inspectors, testers, appraisers and qualified third parties reasonable access to the Property upon
442 advance notice, if necessary to satisfy the contingencies in this Offer. Buyer and licensees may be present at all inspections and testing. Except
443 as otherwise provided, Seller's authorization for inspections does not authorize Buyer to conduct testing of the Property.
444 **NOTE: Any contingency authorizing testing should specify the areas of the Property to be tested, the purpose of the test, (e.g., to**
445 **determine if environmental contamination is present), any limitations on Buyer's testing and any other material terms of the**
446 **contingency.**
447 Buyer agrees to promptly restore the Property to its original condition after Buyer's inspections and testing are completed unless otherwise agreed
448 to with Seller. Buyer agrees to promptly provide copies of all inspection and testing reports to Seller. Seller acknowledges that certain inspections
449 or tests may detect environmental pollution which may be required to be reported to the Wisconsin Department of Natural Resources.

450 ☐ **INSPECTION CONTINGENCY:** This contingency only authorizes inspections, not testing (see lines 437-449). This Offer is contingent upon
451 a qualified independent inspector(s) conducting an inspection(s) of the Property which discloses no Defects. This Offer is further contingent upon
452 a qualified independent inspector or qualified independent third party performing an inspection of _____
453 _____ (list any Property feature(s) to be separately inspected, e.g., dumpsite, etc.) which
454 discloses no Defects. Buyer shall order the inspection(s) and be responsible for all costs of inspection(s). Buyer may have follow-up inspections
455 recommended in a written report resulting from an authorized inspection performed provided they occur prior to the deadline specified at line 461.
456 Each inspection shall be performed by a qualified independent inspector or qualified independent third party.
457 **CAUTION: Buyer should provide sufficient time for the primary inspection and/or any specialized inspection(s), as well as any follow-up**
458 **inspection(s).**
459 For the purpose of this contingency, Defects (see lines 223-225) do not include conditions the nature and extent of which Buyer had actual
460 knowledge or written notice before signing the Offer.
461 ■ **CONTINGENCY SATISFACTION:** This contingency shall be deemed satisfied unless Buyer, within _____ days of acceptance,
462 delivers to Seller a copy of the inspection report(s) and a written notice listing the Defect(s) identified in the inspection report(s) to which Buyer
463 objects (Notice of Defects).
464 **CAUTION: A proposed amendment is not a Notice of Defects and will not satisfy this notice requirement.**
465 ■ **RIGHT TO CURE:** Seller (shall)(shall not) STRIKE ONE ("shall" if neither is stricken) have a right to cure the Defects. If Seller has the right to
466 cure, Seller may satisfy this contingency by: (1) delivering written notice to Buyer within 10 days of Buyer's delivery of the Notice of Defects stating
467 Seller's election to cure Defects, (2) curing the Defects in a good and workmanlike manner and (3) delivering to Buyer a written report detailing the
468 work done within 3 days prior to closing. This Offer shall be null and void if Buyer makes timely delivery of the Notice of Defects and written
469 inspection report(s) and: (1) Seller does not have a right to cure or (2) Seller has a right to cure but: (a) Seller delivers written notice that Seller will
470 not cure or (b) Seller does not timely deliver the written notice of election to cure.
471 ☐ **CLOSING OF BUYER'S PROPERTY CONTINGENCY:** This Offer is contingent upon the closing of the sale of Buyer's property located at
472 _____ , no later than _____. If Seller accepts a bona fide secondary offer,
473 Seller may give written notice to Buyer of acceptance. If Buyer does not deliver to Seller a written waiver of the Closing of Buyer's Property
474 Contingency and _____
475
476 **[INSERT OTHER REQUIREMENTS, IF ANY (e.g., PAYMENT OF ADDITIONAL EARNEST MONEY, WAIVER OF ALL CONTINGENCIES, OR**
477 **PROVIDING EVIDENCE OF SALE OR BRIDGE LOAN, etc.)]** within _____ hours of Buyer's Actual Receipt of said notice, this Offer shall be
478 null and void.
479 [X] **ADDENDA:** The attached _____ Addendum A _____ is/are made part of this Offer.
480 This Offer was drafted by [Licensee and Firm] _____ Ellen M. Wagner as scrivner for Seller _____
481 _____ on _____ 05/20/2020 _____
482 Buyer Entity Name (if any): _____
483 (X) *DeMaryl R. Howard* / DEMARYL R. HOWARD                                                                 05/27/2020
484 Buyer's/Authorized Signature ▲ Print Name/Title Here ► DeMaryl R. Howard                                       Date ▲

485 (X) _____
486 Buyer's/Authorized Signature ▲ Print Name/Title Here ►                                                              Date ▲

487 EARNEST MONEY RECEIPT Broker acknowledges receipt of earnest money as per line 10 of the above Offer.
488 _____ Broker (By) _____
489 **SELLER ACCEPTS THIS OFFER. THE WARRANTIES, REPRESENTATIONS AND COVENANTS MADE IN THIS OFFER SURVIVE CLOSING**
490 **AND THE CONVEYANCE OF THE PROPERTY. SELLER AGREES TO CONVEY THE PROPERTY ON THE TERMS AND CONDITIONS AS**
491 **SET FORTH HEREIN AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS OFFER.**
492 Seller Entity Name (if any): _____ Living Epistle Church of Holiness, Inc. _____
493 (X) *Terry Taper*                                                                                               5/27/2020
494 Seller's/Authorized Signature ▲ Print Name/Title Here ► Terry Taper, President                                  Date ▲

495 (X) _____
496 Seller's/Authorized Signature ▲ Print Name/Title Here ►                                                              Date ▲

497 This Offer was presented to Seller by [Licensee and Firm] _____
498 _____ on _____ at _____ a.m./p.m.

499 This Offer is rejected _____ This Offer is countered [See attached counter] _____
500                        Seller Initials ▲       Date ▲                                                              Seller Initials ▲        Date ▲

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                  Living Epistle

Case 19-25789-gmh    Doc 104-1    Filed 06/10/20    Page 9 of 10

# ADDENDUM A TO THE OFFER TO PURCHASE

This Addendum is attached to and made a part of the Offer to Purchase dated May 20, 2020 made by the Buyer, __Demaryl Howard__ with respect to the Property at 4022 N. 27th Street, Milwaukee, Wisconsin.

[X] **PROPERTY SOLD "AS-IS WHERE-IS":** Seller has never occupied the property. Buyer acknowledges that neither Seller, nor any agent or employee of Seller, nor any other party in any way affiliated with Seller, has made or makes any statements, representations or warranties concerning the Property to Buyer, which include any statement, representation or warranty concerning the physical and/or non-physical aspects of the Property. Buyer is encouraged to have a thorough, independent inspection of the Property including the operational aspects of the Property, and hereby agrees to purchase the same in an "as is" condition without reliance on any representations or warranties from Seller or any agent or employee of Seller, or any other party in any way affiliated with Seller. Buyer hereby waives his/her/its right to receive any real estate condition report and any right to rescind he/she/it may have pursuant to Chapter 709 of the Wisconsin State Statutes. Buyer hereby waives, and Seller Disclaims, any and all representations and warranties including but not limited to the Warranties of Merchantability and Fitness for a particular purpose. Lines 67-66, 181-215, and 223-226 of the Offer to Purchase are hereby deleted in their entirety.

The closing of this transaction shall be deemed Buyer's waiver of all claims against the Seller for breach of contract or breach of warranty, and any and all tort claims, including but not limited to claims for negligent misrepresentation, strict liability for misrepresentation and intentional misrepresentation, in any way arising out of or relating to the condition of the Property.

[X] **DEFAULTS:** The default provisions of the Offer to Purchase Lines 396-408 [WB-15] are hereby deleted, and replaced with the following:
Seller and Buyer each have the legal duty to use good faith and due diligence in completing the terms and conditions of this Offer. A material failure to perform any obligation under this Offer is a default which may subject the defaulting party to liability for as follows:
    If <u>Buyer defaults</u>, Seller may terminate the Offer and retain the earnest money as liquidated damages.
    If <u>Seller defaults</u>, Buyer may terminate the Offer and have the earnest money returned.
THE PARTIES UNDERSTAND THAT THERE ARE OTHER AVAILABLE REMEDIES AT LAW AND EQUITY, AND SPECIFICALLY WAIVE ALL REMEDIES OTHER THAN THOSE PROVIDED IN THIS PARAGRAPH.

Dated this __27__ day of May, 2020.

_____

Dated this __27__ day of May, 2020.

_____
Terry Taper, President of Living Epistle Church of Holiness, Inc.